[Doc. No. 34]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

SALEENA KOROTKI,

                    Plaintiff,

    v.                                  Civil No.20-11050(CPO/MJS)

COOPER LEVENSON, APRIL,
NIEDELMAN & WAGENHEIM, P.A.;
RICHARD C. KLEIN; ERIC A.
BROWNDORF, ESQ.; MARK A.
FIORE, ESQ.; PETER Y. FU,
ESQ.; JOHN DOES 1-10; JANE
DOES 1-10; and ABC
CORPORATIONS 1-10,

                    Defendants.

**O P I N I O N   &   O R D E R**

    This matter is before the Court by way of the motion to quash

subpoenas [Doc. No. 34] filed by third-party Abraham Korotki and

the cross-motion to compel compliance with subpoenas [Doc. No. 37]

filed by plaintiff Saleena Korotki, which also serves as her

response in opposition to the motion to quash. The Court has also

received third-party Abraham Korotki's reply and opposition to the

cross-motion [Doc. No. 38]. The Court exercises its discretion to

decide the motions without oral argument. See Fed. R. Civ. P. 78;

L. Civ. R. 78.1. For the following reasons Abraham Korotki's motion

to quash is GRANTED and Saleena Korotki's cross-motion to compel

compliance is DENIED. However, the Court will permit Saleena Korotki leave to reserve a more narrowly tailored third-party subpoena, if necessary.

**Background**

This is a legal malpractice action brought by Saleena Korotki ("Plaintiff") against Cooper Levenson and certain of its current and former attorneys ("Defendants"). Plaintiff alleges that while Defendants were representing both Plaintiff and Abraham Korotki ("Petitioner"), the Defendants drafted and induced Plaintiff to sign a series of mid-marriage matrimonial documents and Powers of Attorney documents (the "Cooper Levenson Documents"). Br. in Opp. and in Supp. of Cross-Motion at *2-3. According to Plaintiff, the Cooper Levenson Documents were adverse to Plaintiff's interest, beneficial to Petitioner, and utilized with Defendants' assistance to Plaintiff's detriment. Id. Specifically, Plaintiff alleges the Cooper Levenson Documents enabled Petitioner to divert all of their marital assets to Petitioner's sole and exclusive use and benefit, and also enabled Petitioner to obtain a "divorce" from Plaintiff without her knowledge or consent as well as prevent her from receiving alimony or other support. Id. at *3-5, 8-9; see also Complaint at ¶¶ 40-47. Thus, Plaintiff maintains Defendants acted in blatant disregard of a conflict of interest and committed legal malpractice and breach of contract. Plaintiff claims damages in

excess of $5 million. Br. in Opp. and in Supp. of Cross-Motion at *5.

On November 5, 2021, Plaintiff issued and served two separate subpoenas under Fed. R. Civ. P. 45 upon non-party Petitioner. The first subpoena is a subpoena duces tecum containing 88 demands for Petitioner to produce documents, electronically stored information, and objects. Doc. No. 34-4. The second subpoena is a subpoena ad testificandum demanding Petitioner appear for a deposition with the 88 items sought in the subpoena duces tecum. Doc. No. 35-5 (subpoena duces tecum, Doc. No. 34-4, and subpoena ad testificandum, Doc. No. 34-5, collectively, the "Subpoenas").[1] Petitioner then brought the present motion seeking to quash both Subpoenas [Doc. No. 34], in response to which Plaintiff filed opposition and a cross-motion to compel compliance [Doc. No. 37].

**Legal Standard**

Federal Rule of Civil Procedure 45 governs the issuance, service, and enforcement of subpoenas. Pursuant to Rule 45, a party may direct subpoenas to third-party individuals commanding them to, inter alia, attend and testify at a deposition and to produce designated documents, electronically stored information, or

---

[1]   Neither Petitioner nor Plaintiff attach a copy of the demand request to the subpoena ad testificandum, but the Court notes that the production box on the face of the subpoena is checked and counsel for Petitioner has represented that both subpoenas seek the production of the same documents and items. Br. in Supp. at * 2; Doc. No. 34-5.

tangible things in their possession, custody, or control. Fed. R. Civ. P. 45(a)(1); Fed. R. Civ. P. 45(c); see also New Jersey Dep't of Env't Prot. v. Am. Thermoplastics Corp., No. CV 98-4781, 2021 WL 4551337, at *2 (D.N.J. Oct. 5, 2021).

Where a subpoena "requires disclosure of privileged or other protected matter," or "subjects a person to undue burden," the Court has the authority to quash or modify it upon a timely motion by the party served. Fed. R. Civ. P. 45(d)(3); Am. Thermoplastics Corp., 2021 WL 4551337, at *2. An undue burden exists when the subpoena is "unreasonable or oppressive." In re Lazaridis, 865 F. Supp. 2d 521, 524 (D.N.J. 2011) (quoting Schmulovich v. 1161 Rt. 9 LLC, No. CIV.A. 07-597, 2007 WL 2362598, at *4 (D.N.J. Aug. 15, 2007).

Further, courts have the authority quash or modify subpoenas that fall outside the scope of permissible discovery. See Schmulovich, 2007 WL 2362598, at *2. "The scope of discovery pursuant to Rule 45 is the same as Rule 26(b)." In re Novo Nordisk Sec. Litig., 530 F. Supp. 3d 495, 501 (D.N.J. 2021); see also In re EthiCare Advisors, Inc., No. CV 20-1886, 2020 WL 4670914, at *2 (D.N.J. Aug. 12, 2020); Mallinckrodt LLC v. Actavis Labs, No. 2:15-CV-3800, 2017 WL 5476801, at *2 (D.N.J. Feb. 10, 2017). Under Rule 26(b)(1),

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's
> claim or defense and proportional to the needs of the

case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Under Rule 26(b)(2)(C),

[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).[2]

Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. See Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc., 92 F.R.D. 371, 375 (D.N.J. 1981). "Although the scope of

---

[2] "[A]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." New Jersey Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc., No. CIV.A. 12-5610, 2014 WL 4352327, at *4 (D.N.J. Sept. 2, 2014) (internal quotations omitted); see also Turner v. Off. Depot, Inc., No. 2:18-CV-779, 2019 WL 11277045, at *2 (M.D. Ala. Oct. 25, 2019) ("Although a party is permitted to seek documentary evidence from a third party through the issuance of a Rule 45 subpoena, the court may limit a party's use of a subpoena if it determines that the discovery is 'outside the scope permitted by Rule 26(b)(1).'") (quoting Fed. R. Civ. P. (b)(2)(C)).

discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999). "A court may limit or deny otherwise appropriate discovery when the information sought is not proportional to the needs of the case when certain factors are considered, including burden and expense." In re EthiCare Advisors, Inc., 2020 WL 4670914, at *3 (denying motion to compel compliance with subpoena served on non-party upon finding movant had not shown the information sought was relevant, and even if it had some minimal possible relevance, it would not be proportional to the needs of the case when considering the full range of interests involved); see also Travelers Indem. Co. v. Metro. Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005) (observing that the court is required to weigh the burden to the subpoenaed party against the value of the information to the serving party).

Finally, the Court's discretion to require compliance with a subpoena (or not) is further guided by Rule 45(d), which provides that

> [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction-which may include lost earnings and reasonable attorney's fees-on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1).

Applying Rules 26 and 45, the Court must balance several competing factors in assessing the reasonableness of the subpoenas: (1) relevance, (2) the party's need for the documents, (3) the breadth of the document request, (4) the time period covered by it, (5) the particularity with which the documents are described, (6) the burden imposed, and (7) the subpoena recipient's status as a nonparty to the litigation. Gould v. O'Neal, No. CV 17-100, 2019 WL 4686991, at *3 (D.N.J. Sept. 26, 2019) (citing Biotechnology Value Fund, L.P. v. Celera Corp., No. CIV.A. 14-4046, 2014 WL 4272732, at *2 (D.N.J. Aug. 28, 2014)); see also Burgess v. Galloway, Civ. No. 20-06744, 2021 WL 2661290, at *3 (D.N.J. Jan. 28, 2021).

"If the subpoenaing party shows the documents sought to be relevant, the resisting non-party must 'explain why discovery should not be permitted.'" Biomet, Inc. v. Howmedica Ostenics Corp., No. CIV.A. 14-6634, 2015 WL 1543221, at *2 (D.N.J. Apr. 7, 2015) (quoting Miller v. Allstate Fire & Cas. Ins. Co., No. CIV. 07-260, 2009 WL 700142, at *2 (W.D. Pa. Mar. 17, 2009)). The party moving to quash has the heavy burden of demonstrating the unreasonableness or oppressiveness of the subpoena. DIRECTV, Inc. v. Richards, No. CIV. 03-5606, 2005 WL 1514187, at *2 (D.N.J. June 27, 2005). "However, a non-party to litigation is afforded greater protection from discovery than a party." Burgess, 2021 WL 2661290,

at *2 (citing Chazanow v. Sussex Bank, Civ. No. 11-1094, 2014 WL 2965697, at *2 (D.N.J. July 1, 2014)). "The standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." Burgess, 2021 WL 2661290, at *2 (quoting Stamy v. Packer, 138 F.R.D. 412, 419 (D.N.J. 1990). In addition to relevance, "the required Rule 26(b)(1) proportionality analysis may be different when the interests of a third-party are weighed as opposed to a party." In re: Riddell Concussion Reduction Litig., No. 13-7585, 2016 WL 4119807, at *4 (D.N.J. July 7, 2016); see also Gould, 2019 WL 4686991, at *4 ("That the subpoena is directed to a nonparty is also an appropriate consideration in this undue burden calculus."); Spring Pharms., LLC v. Retrophin, Inc., No. 18-CV-04553, 2019 WL 3731725, at *3 (E.D. Pa. Aug. 8, 2019) ("The unwanted burden thrust upon non-parties" is afforded "special weight in evaluating the balance of competing needs in a Rule 45 inquiry.") (internal quotations omitted). An undue burden is often created where the material sought from a nonparty is easily available from a party; however, this factor alone is not dispositive. Miller v. Allstate Fire & Cas. Ins. Co., No. CIV. 07-260, 2009 WL 700142, at *2 (W.D. Pa. Mar. 17, 2009); see also Precourt v. Fairbank Reconstruction Corp., 280 F.R.D. 462, 467 (D.S.D.2011) ("If the party seeking information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena."); Arthrex, Inc. v. Parcus Medical, LLC,

10-CIV-151, 2011 WL 6415540, at *6 (S.D. Ind. Dec. 21, 2011) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents."); Amini Innovation Corp. v. McFerran Home Furnishings, Inc., 300 F.R.D. 406, 410 (C.D. Cal. 2014) ("Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party.").

The resolution of the instant dispute lies within the Court's sound discretion. See In re: Riddell Concussion Reduction Litig., 2016 WL 4119807, at *2; Forrest v. Corzine, 757 F. Supp.2d 473, 477 (D.N.J. 2010) ("Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances."). "In all controverted cases it is up to the court to strike a delicate balance among the degree of relevance of the requested materials, the severity of the burden on the subpoenaed person or entity, and the utility of the protective mechanisms provided by the Federal Rules." § 2459 Subpoena for the Production of Documents and Things—Quashing or Modifying a Subpoena, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed.).

**Discussion**

Petitioner submits that the 88 Demands sought in the two Subpoenas all fit into one of two categories: materials that could have been requested from the Defendants, and materials that are in the possession, custody, or control of Plaintiff. See Br. in Supp.

9

at *2. Petitioner contends that both Subpoenas should be quashed because they seek materials already provided to Plaintiff, impose an undue burden, and fall outside the scope of permissible discovery.[3] See Br. in Supp. at *3.

Turning first to the issue of relevance, the Court is satisfied that the Demands are generally calculated to yield information bearing on Plaintiff's claims in the instant case. While certain of the Demands are seemingly directed at matters of liability (i.e., Demands 2, 7, 79), the better part of the requested production would appear germane to Plaintiff's potential damages. Specifically, materials revealing the nature and extent of Petitioner's assets (including their conveyance, transfer, disposition, etc.) may very well illuminate the value of Plaintiff's asserted pecuniary interest in a portion of those assets and their proceeds, of which Plaintiff claims she was wrongfully deprived as a direct consequence of Defendant's alleged

---

[3] Petitioner does not challenge Plaintiff's demand for Petitioner to appear for deposition in this case but instead seeks to quash the subpoena ad testificandum (Doc. No. 34-5) on the basis that it commands Petitioner bring to the deposition the 88 items listed in the subpoena's attachment. See Br. in Supp. at 2; Ex. C [Doc. No. 34-5]. Petitioner also challenges the Subpoenas as being untimely because they were served after the deadline for propounding initial written discovery. Id. at 10. However, the Court finds that the Subpoenas were served well within the operative deadline for factual discovery.

malpractice.[4]  Against  this  backdrop,  the  Court  can  place  the

relevance  of  most  of[5]  the  sought-after  information  considering  the

broad  construction  of  the  term  under  Fed. R. Civ. P. 26(b)(1)  and

Fed. R. Evid. 401.[6]

That said, relevance is but one facet of the permissible scope

of  a  subpoena  as  contemplated  under  Rules  26(b)  and  45(d).[7]  A

---

[4] Without passing on the merits, of course, this comports with Plaintiff's theory set forth at the outset of this case that the mid-marriage agreement and other Cooper Levenson documents prepared by Defendants enabled Petitioner "to divert all of their marital assets to [Petitioner's] sole and exclusive use and benefit, and also enabled [Petitioner] to obtain a 'divorce' from [Plaintiff] without her knowledge or consent." Br. in Opp. and in Supp. of Cross-Motion at *8-9; see also Complaint at ¶¶ 40-47.

[5] Again, the Court notes that there are 88 documents and things demanded in the Subpoenas from Plaintiff, and Plaintiff has made no specific proffer of relevance by item or even by category other than to broadly assert said relevance. Likewise, Petitioner has offered no meaningful itemized analysis as to why specific items and/or materials would not be relevant. However, this is neither here nor there as the Court can readily find, for the reasons set forth herein, that the demands are overbroad as drafted and compelling compliance would exact an undue burden. Accordingly, it is appropriate for the Court, in its discretion, to quash the Subpoenas in their entireties without conducting an item-by-item relevancy analysis at this time.

[6] "Relevance is not, on its own, a high bar." Va. Dep't of Corrs. v. Jordan, 921 F.3d 180, 188 (4th Cir. 2019). "Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." In re Waldrop, 560 B.R. 806, 810 (Bankr. W.D. Okla. 2016).

[7] "Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." Coats v. Chaudhri, No. 1:13-CV-02032, 2016 WL 1046233, at *2 (E.D. Cal. Mar. 16, 2016).

finding of relevance does not end the inquiry. Rather, Rule 45 "requires the Court to quash subpoenas which seek irrelevant information **or are overbroad**[,]" among other things. <u>In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.,</u> No. CV 3:16-MC-1, 2016 WL 1071016, at *5 (E.D. Va. Mar. 17, 2016) (citing <u>Singletary v. Sterling Transp. Co.,</u> 289 F.R.D. 237, 241 (E.D. Va. 2012) (emphasis added); Fed. R. Civ. P. 45. Relevance is considered in the context of the undue burden test. <u>See</u> <u>Andra Grp., LP v. JDA Software Grp., Inc.,</u> 312 F.R.D. 444, 449 (N.D. Tex. 2015) ("When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1).").[8] As discussed, <u>supra</u>, "consideration of undue burden under the rule requires the Court to weigh the burden of the subpoenaed party against the requested information's relevancy, need of the serving party for the information, the breadth of the information requested, the time period covered by the request, and the particularity with which the request is made." <u>Coats</u>, 2016 WL 1046233, at *2; <u>see also</u> <u>In re Lazaridis</u>, 865 F. Supp. 2d 521, 524.

---

[8] "The 2015 amendments [] added proportionality as a requirement for permissible discovery. Relevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case." <u>In re Bard IVC Filters Prod. Liab. Litig.,</u> 317 F.R.D. 562, 564 (D. Ariz. 2016).

Measured against this criteria, the Court can readily conclude that the Subpoenas are overbroad as drafted. The demands are vast, in many instances are temporally unrestrained, and would wield an undue burden on the Petitioner to the extent they would require the Petitioner to reproduce materials already provided to the Plaintiff or materials that can be more readily obtained from the Defendants.

The overbreadth of the requests is illustrated by the Subpoenas' Demands for Petitioner to wholesale produce his lap top computer (Demand 80) and cell phone (Demand 81). Generally speaking, courts have recognized the need to guard against undue intrusiveness and to be cautious in requiring the inspection of electronic devices, in order to protect privacy interests. See Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *4 (M.D. Pa. Jan. 9, 2020) (quoting Hespe v. City of Chicago, No. 13 C 7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016)) (internal quotations omitted). "A party is [] not entitled to a routine right of direct access to a party's electronic information system, although such access may be justified in some circumstances." Bakhit v. Safety Marking, Inc., No. 3:13CV1049, 2014 WL 2916490, at *2 (D. Conn. June 26, 2014) (quoting Genworth Fin. Wealth Mgmt., Inc. v. McMullan, 267 F.R.D. 443, 446 (D. Conn. 2010)) (internal quotations omitted). In defining the extent of discovery to afford to a party, a court

13

should consider the relationship between the plaintiff's claims and the electronic devices. See Calyon v. Mizuho Securities USA Inc., No. 07 CIV0224, 2007 WL 1468889, at *3 (S.D.N.Y., May 18, 2007). "Mere suspicion" or speculation that a party may be withholding discoverable information is insufficient to support an "intrusive examination" of the opposing party's electronic devices or information systems. Scotts Co. LLC v. Liberty Mut. Ins. Co., No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007).

In particular, a court must be cautious "where the request is overly broad and where the connection between the party's claims and the [electronic device] is vague and unproven." A.M. Castle & Co. v. Byrne, 123 F. Supp. 3d 895, 900-01 (S.D. Tex. 2015) (collecting cases); see also Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Nemaha Brown Watershed Joint Dist. No. 7, 294 F.R.D. 610, 619 (D. Kan. 2013) (denying a request to inspect personally-owned devices of defendant's employees in part because "the Court [had] significant concerns regarding the intrusiveness of the request and the privacy rights of the individuals to be affected"). Courts have also recognized that privacy interests may be taken into account when evaluating proportionality, particularly in the context of a request to inspect personal electronic devices. See Tingle v. Hebert, No. 15-626, 2018 WL 1726667, at *7-8 (M.D. La. Apr. 10, 2018) (finding that "Defendants have also made no showing that the requested forensic examination

14

of Plaintiff's personal cell phone and personal email accounts are proportional to the needs of this case" and holding that "'[t]he utility of permitting a forensic examination of personal cell phones must be weighed against inherent privacy concerns'") (quoting <u>John Crane Grp. Corp. v. Energy Devices of Tex., Inc.</u>, No. 6:14-CV-178, 2015 WL 11112540, at *2 (E.D. Tex. Feb. 2, 2015)).[9]

---

[9] <u>See also</u>, <u>Crabtree v. Angie's List, Inc.</u>, No. 1:16-cv-00877, 2017 WL 413242, at *3 (S.D. Ind. Jan. 31, 2017) (denying request to forensically examine plaintiff's personal cell phones and holding that the forensic examination "is not proportional to the needs of the case because any benefit the data might provide is outweighed by Plaintiffs' significant privacy and confidentiality interests"); <u>Hespe</u>, 2016 WL 7240754, at *3 (affirming order denying request to inspect plaintiff's personal computer and cell phone because, among other things, inspection "is not 'proportional to the needs of this case' because any benefit the inspection might provide is 'outweighed by plaintiff's privacy and confidentiality interests'"); <u>Areizaga v. ADW Corp.</u>, No. 3:14-cv-2899-B, 2016 WL 9526396, at *3 (N.D. Tex. Aug. 1, 2016) (denying request to inspect plaintiff's personal computer, smart phone, and other electronic devices because the request "is not proportional to the needs of the case at this time, when weighing [defendant]'s explanation and showing as to the information that it believes might be obtainable and might be relevant against the significant privacy and confidentiality concerns implicated by [defendant]'s request"); <u>In re Anthem, Inc. Data Breach Litig.</u>, No. 15-md-02617, 2016 WL 11505231, at *1–2 (N.D. Cal. Apr. 8, 2016) (denying request to inspect or forensically image plaintiffs' computers, tablets, and smartphones as "invad[ing] plaintiffs' privacy interests" and "disproportional to the needs of the case"); <u>John B. v. Goetz</u>, 531 F.3d 448, 460 (6th Cir. 2008) (issuing writ of mandamus to set aside orders for forensic imaging of state-owned and privately-owned employee computers because, among other things, "[t]he district court's compelled forensic imaging orders here fail to account properly for the significant privacy and confidentiality concerns present in this case"); <u>Johnson v. Nyack Hosp.</u>, 169 F.R.D. 550, 562 (S.D.N.Y. 1996) (holding that Rule 26 allows courts to limit discovery on account of burden, including "where the burden is not measured in the time or expense required to respond to requested discovery, but lies instead in the adverse consequences

With respect to relevance, though Plaintiff's Demands to directly inspect the Petitioner's lap top computer and cell phone could conceivably uncover relevant materials, they also threaten to sweep in substantial irrelevant information.[10] And as to proportionality, these Demands are not commensurate to the needs of the case and appear overbroad. Considering the availability of the information from other sources and the absence of any specific showing that Petitioner has improperly withheld materials which should have already been turned over, the Court will not permit such extraordinary and uniquely invasive access.

Apart from the requests for the lap top computer and cell phone, which are patently overbroad, the most significant problem, according to the Petitioner, is that much of the Subpoenas' demands seek materials duplicative of those already produced and exchanged in the state matrimonial matter. See Br. in Supp. at *6. Petitioner contends that Demands 10 to 63 attached to both Subpoenas are nearly identical to Requests for Production 1 to 54 [Doc. 34-10]

_____

of the disclosure of sensitive, albeit unprivileged, material," and that courts should consider "the burdens imposed on the [responding parties'] privacy and other interests").

[10] See Goetz, 531 F.3d at 457–58 (noting that "imaging of these computers and devices will result in the duplication of confidential and private information unrelated to the [ ] litigation"); Salazar v. Bocanegra, No. 12cv0053, 2012 WL 12893938, at *2 (D.N.M. July 27, 2012) (noting that forensic images, due to their broad nature, may include information irrelevant to the parties' claims or defenses).

and Demands 64 to 71 attached to both Subpoenas are identical to Requests for Production 57 to 64 [Doc. No. 34-10]. Id. at *5. Petitioner argues the Subpoenas should therefore be quashed because the issuing attorney took no steps to avoid imposing an undue burden or expense as required under Rule 45(d)(1). Id. at *6-8. Further, Petitioner avers the Subpoenas fall outside the scope of discovery because they are "arguably relevant" and not proportional to the needs of the case considering Petitioner's relative access to the information and the burden/expense imposed. Id. at *7-8.

The Court generally agrees with Petitioner in this regard. The Court has reviewed the Subpoenas and Requests for Production side-by-side and determined that while not all of the requests are identical or virtually identical, at least fifty-one of them are, with the caveat that the subpoenas were issued in 2021 and the Request for Production in 2018. Compare Br. in Supp., Exhibit B [Doc. No. 34-4] with Exhibit H [Doc. No. 34-10].[11] As such, it is apparent to the Court that large swaths of the Demands call for materials which are largely duplicative of materials already requested and produced in the matrimonial matter. To the extent

_____

[11] This computation of overlapping requests does not include those seeking the same type of information or materials but for distinct years, which are characteristic of eleven of the requests in both documents.

17

certain of the materials requested in that matter were never actually produced, the Court is at a loss to understand what, if anything, this applies to. Plaintiff's opposition and cross-motion brief state only in general terms that "she disputes that Abe in fact produced all of the documents pertaining to their marital assets in their matrimonial case[,]" without identifying which, if any or all, of the over 10,000 documents produced and exchanged in that action are not responsive to items 10-71 contained in the subpoena. Br. in Opp. and in Supp. of Cross-Motion at *11-12; see also id. at *13 ("Abe failed to produce in the matrimonial case, many of the documents requested in the Document Subpoena, and which Saleena needs for her case against defendants."). Absent a more precise showing, counsel's ipse dixit assertion is insufficient to demonstrate Plaintiff's need for all of this information.[12]

---

[12] Plaintiff's asserts in her opposition and cross-motion papers that "whether the documents requested in the Document Subpoena mirror many of the document requests made in the matrimonial case is beside the point. [Plaintiff] is entitled to obtain those documents from [Petitioner] for use in this case." Br. in Opp. and in Supp. of Cross-Motion at *12. This indicates to the Court that Plaintiff has not fully reviewed what is actually in her possession and is rather attempting to outsource this responsibility to Petitioner. Similarly, Demand 44 in the Subpoenas and the Request for Production seeking "a copy of [Petitioner's] credit report . . . within sixty (60) days of the issuance of this demand to produce" suggests counsel has not heeded the requirement of Fed. R. Civ. P. 45 (d)(1) directing that reasonable steps must be taken to avoid imposing undue burden or expense on the subpoenaed party.

Next, the Court turns to the Subpoenas' demands for materials which Petitioner asserts "could have been requested from the defendants[.]" See Br. in Supp. at *2. Petitioner has not identified which of the Demands he contends seek materials that could have been requested from Defendants. Nevertheless, upon review of the Subpoenas it appears these could reasonably include, at minimum Demands 2,[13] 5,[14] 6,[15] 7,[16] 8,[17] and 79[18] concerning his and Plaintiff's dealings with Cooper Levenson. See Doc. No. 34-4. Now, the Court has independently considered that certain of the materials sought by these Demands may not be "easily available from a party" (see Miller, 2009 WL 700142, at *2) given the limitations on disclosure imposed by/protections afforded under

---

[13] "Any and all document[s] produced, including any discovery responses served with said documents, producing [sic] during the proceeding Korotki v. Cooper Levenson, Superior Court of New Jersey, Docket No. ATl-L-2858-19."

[14] "All invoices received from the Cooper Levenson law firm, whether addressed to you, or to you and Saleena."

[15] "All records of payments to the Cooper Levenson law firm, including but not limited to, receipts received from them."

[16] "All communications with the Cooper Levenson law firm, whether addressed to you, or to you and Saleena."

[17] "All records of any moneys, assets or documents given by you to Cooper Levenson to hold in escrow."

[18] "Any and all documents, emails, and texts, letters, writings and other documents in your possession or control, evidencing or pertaining to any communications you had with anyone at the Cooper Levenson law firm."

the attorney-client privilege and work-product doctrine compelling compliance. However, at least some of them – namely, communications and invoices addressed to Plaintiff herself – would be counted as within her possession, custody, or control and/or likely obtainable through Rule 34 requests. The discovery from <u>Korotki v. Cooper Levenson</u> would likewise appear obtainable through a Rule 34 request. Indeed, the Cooper Levenson Defendants would presumably have access to discovery produced in an action to which they themselves are a party. Ultimately, the Court can discern no obvious reason why Plaintiff would be unable to secure these particular materials through a discovery request or otherwise on her own accord.[19] <u>See</u> <u>Insignia Sys., Inc. v. Edelstein</u>, No. CIV.A. 09-4619, 2009 WL 3521796, at *2 (D.N.J. Oct. 22, 2009) (noting "Petitioner [did not] give any rationale for its failure to show that it could not obtain the documents sought from [Defendant] itself"). Notwithstanding the specter of privilege and/or work-product based objections (which has not been raised in the briefing as a basis for compelling compliance), because Plaintiff through counsel failed to demonstrate efforts made to obtain **any** of this

---

[19] "Need is enhanced when information is uniquely available from the party from whom it is sought. The corollary is that need is diminished when the information is available elsewhere." <u>Am. Standard Inc. v. Pfizer Inc.</u>, 828 F.2d 734, 743 (Fed. Cir. 1987). "A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents." <u>Arthrex, Inc.</u>, 2011 WL 6415540, at *6.

20

discovery on her own, the Court sees it appropriate in its discretion to quash the Subpoenas in keeping with the proportionality rule and again noting the apparent disregard of Rule 45(d)(1)'s requirement to "take reasonable steps to avoid imposing undue burden and expense." Fed. R. Civ. P. 45(d)(1).

In consideration of the sheer breadth of the Demands, the duplicative nature of dozens of demands with requests made in the matrimonial action, the Court's inevitable conclusion based on the briefing that there has not been a sufficient inquiry undertaken by Plaintiff to confirm what materials being sought have already been provided, and because it appears that several items can be more directly obtain from Defendants, the Court finds the Subpoenas to be overbroad, disproportional and unreasonable as drafted. By the same token, the Court is constrained to find that Plaintiff failed to take reasonable steps to mitigate the burden and expense that would invariably proceed were the Court to not quash these subpoenas as drafted.

Having found the Subpoenas to be overbroad, the Court quashes them in their entireties and will permit Plaintiff to serve a more narrowly drawn version consistent with the foregoing, if necessary.[20] "Though modification of an overbroad subpoena might

---

[20]   The Court is quashing both Subpoenas because both Subpoenas seek production of the same documents and records. The subpoena ad testificandum's notice for Petitioner to appear for deposition,

be preferable to quashing, courts are not required to use that lesser remedy first." Tiberi v. CIGNA Ins. Co., 40 F.3d 110, 112 (5th Cir. 1994). "The district court's decision to quash [a] subpoena and to allow [subpoenaing party] to start anew on a clean slate instead of itself modifying the subpoena was within the court's sound discretion." Id.; Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 53-54 (S.D.N.Y. 1996) ("It is for Plaintiffs – not this Court – to redraft the subpoena so that all of its provisions state precisely and specifically the documents the plaintiffs seek").

Accordingly, it is on this **17th** day of **June, 2022,**

**ORDERED** that the Petitioner's Motion to Quash the Subpoenas is **GRANTED** and the Plaintiff's Cross-Motion to Compel is **DENIED;** and it is further

**ORDERED** that Plaintiff shall have leave to serve a more narrowly tailored subpoena duces tecum, if necessary, after fully reviewing the matrimonial records and what is already in Plaintiff's possession, and requesting/securing those items that can be obtained directly from Defendants; and it is further

**ORDERED** that Plaintiff shall have leave to reserve the subpoena ad testificandum either without the document requests or, if necessary, with more narrowly tailored requests after fully

---

standing alone, is not objected to and is clearly permissible under Rule 26 and Rule 45.

reviewing the matrimonial records and what is already in Plaintiff's possession, and requesting/securing those items that can be obtained directly from Defendants.[21]

s/Matthew J. Skahill
Matthew J. Skahill
United States Magistrate Judge

---

[21] If Plaintiff elects to serve the subpoena ad testificandum including with it the modified demands, then Plaintiff should simply serve one subpoena.